YAZOO & MISSISSIPPI VALLEY RAILROAD Co. *v*. LAKEVIEW TRACTION Co.

[56 South. 393.]

1. DEEDS. *Construction. Forfeitures. Conditions subsequent. Breach. Right of re-entry. Limitations. Rents.*

The law does not look with favor upon forfeitures; and the provisions of a deed in cases of doubt or obscurity are construed most strongly against the grantor; all that is required is a substantial compliance with a condition subsequent and no restrictions or limitations will be enforced which cannot fairly be inferred from the terms of the instrument.

2. DEEDS. *Construction. Intention of the parties.*

In cases of ambiguity in contracts the contemporaneous construction which the parties thereto placed upon the contract should be looked to in order to ascertain the intention of the parties.

3. RAILROAD. *Right of way. Deed. Construction. Condition subsequent.*

> Where the original owner of land conveyed to a railroad a right of way and two lots adjoining the right of way in consideration that the railroad was to locate a depot and build section houses on the two lots, but upon the express condition that in case the railroad or its assigns should at any time remove said depot or section houses or both off the land then the same was to revert to the grantors, their heirs or assigns, and thereafter the said road moved the depot building off the lot upon which it was built, leaving the section houses on the other lot, *held*, that the removal of the depot operated as a breach of the condition subsequent as to the lot upon which it was built, but not as to the other lot.

4. DEEDS. *Construction.*

> In construing a deed the court must give force and effect to every word used in the instrument, if by so doing harmony can be preserved. It cannot strike out of the deed any word which by so doing will alter its meaning.

5. DEEDS. *Breach of conditions. Condition subsequent. Vendor and vendee.*

> When a remote vendor has conveyed land on a condition subsequent, a subsequent vendee claiming through him acquires the rights of such remote vendor on a breach of such condition, notwithstanding an exception in the deed to such vendee, merely inserted to protect the grantor therein on his covenants of warranty.

6. SAME.

> Where an exception in a deed is repugnant to the granting clause of such deed it is void.

7. DEEDS. *Condition subsequent. Breach. Right of re-entry.*

> Upon a breach of a condition annexed to the grant of a freehold estate, the title conveyed is not void, but is only voidable by the acts of the grantor or his heirs, who must take advantage of the condition and repossess himself of the estate by actual re-entry, or by some act equivalent thereto, and by manifesting an intent to terminate the estate; and this rule applies even though the land is expressly conditioned to revert upon breach of the condition.

8. SAME.

But the election to insist upon a forfeiture or a waiver of it, need not be made promptly after the breach or knowledge thereof.

9. LACHES. *Limitation.*

The doctrine of laches, pure and simple, does not obtain in this state. No time short of the time prescribed by the statutes of limitations will bar an action.

10. EJECTMENT. *Rents. Recovery.*

One who recovers in ejectment is entitled to recover rents under the statute from the date of the institution of the suit up to the date of the trial, the bringing of the suit being the equivalent of an act of re-entry.

APPEAL from the circuit court of DeSoto county.

HON. W. A. ROANE, Judge.

Suit in ejectment by the Lakeview Traction Company against the Yazoo & Mississippi Valley Railroad Company. From a judgment granting relief in part to the plaintiff, defendant appeals and plaintiff prosecutes a cross appeal.

The deed from Montana to the railroad company is as follows:

"This indenture, made and entered into this 7th day of February, A. D. 1884, by and between A. P. Montana and his wife, Lizzie C. Montana, parties of the first part, and the New Orleans, Baton Rouge, Vicksburg & Memphis Railroad Company, parties of the second part, witnesseth: That for and in consideration of the sum of one dollar in hand paid to the said first parties, the receipt whereof is hereby acknowledged, and for the further consideration that the said second party agrees to locate a depot and build sections houses on certain lots of ground hereinafter described, the parties of the first part have bargained, granted, and conveyed, and do hereby grant, bargain, and convey, unto the said railroad company, party of the second part, a right of way one hundred feet wide through the place on Horn Lake lately

purchased by parties of the first part from Mrs. Martha
A. Griffin, and two lots or parcels of land in same tract
more particularly described as follows, to-wit: In sec-
tion 22, township 1, range 9 west, in De Soto county,
state of Mississippi, the lot or parcel of land on the east
side of the railroad hereby conveyed commences at the
intersection of Montana's southern line and the line of
said right of way, and runs 374 feet along said right of
way to a stake; thence S. 77° 20′ E. 210 feet; thence
south 12° 40′ W. 294 feet; thence along Montana's south-
ern line to the beginning—containing 1.61 acres more or
less. The lot or parcel of land on the west side of said
railroad hereby conveyed commences at a stake where the
said right of way crosses the north line of the Horn
Lake public road, and runs at 75° 30′ west 157½ feet;
thence north 14° 30′ E. 210 feet; thence 75° 30′ west
157½ feet; thence along said right of way to the begin-
ning—containing three-fourths of an acre more or less.
The said right of way to extend fifty feet on each side
of the center of the said railroad as now built. To have
and to hold unto the said party and assigns forever.
And the said second party shall have the right to dig
earth, quarry rock, cut timber, and do such other things
on said right of way and lots as are necessary and con-
venient in constructing and operating its line of rail-
road thereon. And the said parties of the first part,
their heirs, or legal representatives do hereby covenant
to forever warrant and defend said title against all
claims; but this conveyance is made upon express condi-
tion and agreement that, in case the second party or their
assigns should at any time in the future remove the
said depot or section houses, or both, off the land here
described, then and in that case the same shall at once
revert to the said parties of the first part, their heirs,
and assigns. In witness whereof, we have hereunto set
our hands and seals the day and year above written.''

*Mayes* and *Longstreet,* for appellant, filed an elaborate brief contending:

1st. That there has been no breach of condition by the railroad. Citing 139 Fed. 60; Jones on Law of Real Property in Conveyancing, page 678; 13 Cyc. 689.

2d. That even though the court does not sustain the above contention and holds that the depot and section houses should not only be located, but kept on the two parcels of ground, the east and west lots, we submit that there has been no breach, but on the contrary, a full performance of the condition imposed, citing 13 Cyc. 1042; *Pittsburg Railway Co.* v. *Rose,* 24 Oh. St. 219, 229; 3 Words and Phrases, page 2005; *State* v. *R. R. Co.,* 18 L. R. A. 505; *McGrath* v. *R. R. Co.,* 24 N. W. 854; *Rabidon* v. *R. R. Co.,* 39 L. R. A. 405; *Grosse* v. *R. R. Co.,* 65 N. W 185; *Magher* v. *R. R. Co.,* 45 N. Y. 514, 520; 3 Elliot, page 943; 33 Cyc. 178; *Jefferson* v. *Barbour,* 89 Ind. 375; 13 Cyc. 696; *R. R. Co.* v. *Cohn,* 15 L. R. A. (N. S.) 595; *State* v. *R. R. Co.,* 86 Miss. 172; *R. R. Co.* v. *Ragsdale,* 54 Miss. 200; *Miller* v. *Tunica County,* 67 Miss. 582; 13 Cyc. 700.

3d. Appellee cannot take advantage of the alleged breach. Citing *R. R. Co.* v. *Neighbor,* 51 Miss. 45; 13 Cyc. ——; *Rannels* v. *Rose,* 145 Fed. 296; *Lewis* v. *Lewis,* 92 Am. St. Rep. 240; *Wadley Lbr. Co.* v. *Lott,* 60 S. E. 836; *Bonniwell* v. *Madison,* 77 N. W. 530; *Griffith* v. *Railway Co.,* 15 Ky. L. Rep. 271; 13 Cyc. 708; *Gould* v. *Richards,* 16 Gray 309; *Gonger* v. *Duryce,* 90 N. Y. 592; *Granite Bldg. Assn.* v. *Green,* 54 Atl. Rep. 792; *Barrie* v. *Smith,* 10 N. W. 168; *Brown* v. *Wrightman,* 90 Pac. 457.

*Percy & Hughes,* for appellee and cross-appellant, filed an extended brief, citing:

60 L. R. A. 751; *Bovier* v. *Baltimore & New York Railroad Co.* (N. J.), reported in 60 L. R. A. 751; Section 1187 of the Code of 1880, section 2433 of the Code of

1892, and section 2762 of the Code of 1906; *Wright* v. *Hardy*, 76 Miss. 524; *Hamel* v. *Minneapolis, St. P. & S. S. M. Ry. Company*, decided by the supreme court of Minnesota in 1906, reported in 107 N. W. Rep. 139, and in 97 Minn. Rep. 334; *Lyman* v. *Suburban Railroad Company*, 190 Ill. 320, s. c. 52 L. R. A. 645; *St. Louis, Iron Mountain & Southern Railroad* v. *Berry*, 86 Ark. 309; *Arkansas Central Railroad Company* v. *Smith*, 71 Ark. 189; *Howell* v. *Railroad Company*, 37 Hun (N. Y.) 381; *Railroad* v. *Hood*, 66 Ind. 580; *Davenport Railroad* v. *Rogers*, 39 Ia. 298.

McLEAN, J., delivered the opinion of the court.

This is an action of ejectment, brought by appellee for the recovery of two lots or parcels of land, and also for rents. The plaintiff recovered judgment in the court below for one of the lots, but rents were denied. The defendant appeals, and the plaintiff in the court below prosecutes a cross-appeal, and assigns as error, first, that it was entitled to recover both lots sued for, and also the rental value of the property; while the contention of the appellant is that the plaintiff should not have recovered either lot. There is no question as to the title, but the whole question hinges on the construction of the deed from one Montana to defendant in the court below and its predecessors. This conveyance was executed by Montana and wife on the 7th day of February, 1884, is found on pages 15, 16, and 17 of the record, and the reporter will copy this deed in full in reporting this case.

In August, 1882, Mrs. Martha A. Griffin conveyed to the railroad company an easement in this strip of land one hundred feet wide as and for a right of way; Providence Bassit et al. conveyed an easement in this strip of land of same width, for the same purpose, to the railroad company on September 6, 1882; and Providence Bassit et al. conveyed certain lands to Montana, February 1, 1884. On April 13, 1883, Martha A. Griffin con-

veyed to Montana the lands through which the right of-
way of the railroad company runs, and it will be observed:
that the deed from Montana to the railroad company re-
cites that the grantor conveys a strip of land one hun--
dred feet wide through the place on Horn Lake, lately
purchased by Montana from Martha A. Griffin.   On
March 27, 1888, Montana and wife conveyed to J. J.
Sheppard the lands which include the above-named right
of way and the two lots or parcels of land sued for;
but the deed contains this clause: "But it is expressly
agreed and understood between the parties hereby that
this conveyance is not intended to embrace or convey the
right of way and depot and section house grounds here-
tofore conveyed to the Mississippi Valley or the L., N. O.
& T. Railway." In February, 1896, Sheppard conveyed
this land to R. L. Boone and Ben Boone.  In March,
1896, Montana quitclaimed to J. J. Sheppard all of the
lands described in his deed of March 27, 1888, without
reservation or exception.  In September, 1897, R. L.
Boone devised his one-half interest in the land to Ben
Boone, and on June 1, 1906, Ben Boone, by deed with
general covenants of warranty, conveyed these lands to
the Lakeview Traction Company, the plaintiff and the
court below; but this conveyance contains the following
provision: "But there is excepted from this conveyance
the rights which have been granted to the Yazoo & Miss--
issippi Railroad Company and its predecessors, by the
deeds from Providence Bassit and wife to the Vicksburg
& Memphis Railroad Company, the deeds from Mrs.
Martha A. Griffin to Memphis & Vicksburg Railroad
Company, and in the deed from A. P. Montana and wife
to the New Orleans, Baton Rouge, Vicksburg & Memphis
Railroad Company, and in the deed from Ben Boone to
the Yazoo & Mississippi Railroad Company."

It is under the Boone deed of June 1, 1906, that plain-
tiff claims the property.  The railroad was constructed
between the years 1882 and 1884.  After the execution.

of the Griffin deed to the railroad company, and in one
of the conveyances executed about 1884, the road is de-
scribed as having been constructed or built.    Shortly
after the execution of the deed by Montana to the rail-
road company in 1884, the railroad company constructed
a freight and passenger depot and water-closet and
pumping station, the major portion of the depot being
upon the right of way, while the smaller part was on one
of the lots described in this conveyance.    This lot we will
designate as the ''west lot,'' and on the other lot, which
we will call the ''east lot,'' section houses were  built.
The east lot is on the east side of the railroad right of
way, and the west lot is on the west side of the right
of way, not directly opposite each other, but the west lot
is northwest of the east lot.    The depot building and sta-
tion platform, pumping station, and water-closet were
on the west side of the railroad track and adjacent there-
to.    About 1904 or 1905 the railroad company removed
its freight and passenger depot and platform from this
west lot, and placed them on the east side, and almost
directly opposite from the former site.    The distance
from the western edge of the new depot to the eastern
side of the old depot is only about fifty-three feet.    The
pumping station and water-closet, or privy, remain
where they were originally placed.    The section houses,
on the east lot, have not been removed, but remain as
heretofore.

The plaintiff's position is that Montana, in his deed
to the railroad company, reserves to himself, his heirs,
and assigns the right to re-enter and take possession of
the two lots conveyed, in the event either the depot or
the section houses are removed from either lot, and, fur-
ther, that a removal of the depot buildings and platform
has been made, and hence the plaintiff, which is the as-
signee of Montana, is entitled to recover both lots or par-
cels of lands.    The contention of the railroad company is,
first, that not only must there be a removal of the depot

and platform, but also of the section houses, before the right to enter upon either lot accrues; second, that there has not been any breach of the condition expressed in the deed, and, further, that, even if a breach has happened as to maintaining the depot, it cannot affect the right of the railroad to hold the lot upon which the section houses were built, as the section houses still remain upon the lot on the east side of the right of way.

In *limine,* it may be said that the law does not look with favor upon forfeitures; second, that the provisions of a deed in cases of doubt or obscurity are construed most strongly against the grantor; and, third, that all that is required is a substantial compliance with a condition subsequent, and no restrictions or limitations will be enforced which cannot be fairly infered from the terms of the instrument.

We will first examine the Montana deed, and see just exactly what are its provisions. In the granting clause it recites that for the consideration the grantee "agrees to locate a depot and build section houses on certain lots of ground hereinafter described." This agreement to locate a depot, etc., is not the condition, but is the covenant, which was performed by the grantee. Yet, in order to ascertain upon what part or parcel of land the buildings were to be located and maintained, it is competent—indeed, material—to take into consideration this granting clause, in order to determine the intention of the parties. The grantee then conveys a right of way through lands lately purchased by him from Mrs. Martha A. Griffin, and then, in addition, two separate and distinct lots, specifically described by metes and bounds, courses and distances, and then follows that portion of the conveyance which is denominated the "condition subsequent," to wit: "But this conveyance is made upon express condition and agreement that, in case the second party or their assigns should at any time in the future remove the said depot or section houses, or both, off

the land here described, then and in that case, the same
shall at once revert to the said parties of the first part,
their heirs, and assigns.'' The defendant contends that
under this provision, if the breach has occurred, the
grantor has the right, not only to recover the two lots,
but also the right of way, for the reason that the lan-
guage is ''the land here described.'' ''But,'' says the
appellant, ''such a construction is impossible.'' In an-
swer it may be said that, while Montana undertook to
convey the right of way, yet as a matter of fact the rail-
road company already had an easement, by a previous
conveyance, to this right of way, and it would be a vio-
lent presumption to indulge that the company would be
willing to accept a conveyance of two small lots, of but
little value, upon the condition that if, in the future, it
should fail to maintain a depot, etc., thereby forfeiting
this most valuable piece of property, to wit, the right
of way—that which to it was essential, and absolutely
necessary to the maintenance of its physical structure,
the roadbed. Common sense would necessarily dictate
the unwisdom of such a contract upon the part of the
railroad company. In order to ascertain the parties, we
must look to each and every part and portion of the in-
strument, the object and purpose, the situation and sur-
roundings of the parties, as well as their then existing
rights. We have seen that the Montana deed, while it
undertook to convey the right of way, yet conferred no
greater right than the company already enjoyed, in so
far as maintaining its roadbed and track is concerned.
The expression ''the land here described'' evidently must
be read and interpreted in the light of that which pre-
cedes it, to wit: First, in the granting clause, the depot,
etc., must be erected upon ''certain lots of ground here-
inafter described;'' and, second, ''the land here de-
scribed,'' as expressed in the condition subsequent clause,
must be that land which is specifically described—the
two lots.

We must look to and consider the contemporaneous construction which the parties themselves place upon the instrument. In cases of ambiguity, this contemporaneous interpretation becomes of great value, and frequently is decisive. We find from the evidence that all of the section houses were wholly on the east lot, while the depot and station platforms were partly on the west lot and partly on the right of way. It can therefore be concluded that the location was satisfactory to both parties, and complied, at least to their satisfaction, with the covenant. We therefore say that the depot and section houses must be maintained upon the two lots described in the conveyance. Has there been a breach of the condition by the railroad? In Elliott on Railroads, vol. 2, section 943, we find the following: "But little assistance can be had from examining other cases, except to ascertain rules of interpretation. Each case differs so widely from all the others that even rules of construction cannot be wholly depended upon. The application of good sense and sound equity are as much to be relied upon as subtle and artificial rules of construction. The point, of course, to be arrived at in every case, is to ascertain the intention of the parties."

It would be profitless to analyze the cases cited in the brief of counsel, or to undertake to harmonize those cases, as little assistance can be obtained thereby. Each case must stand on its own facts, and after all the question is: What was the intention of the parties? We have found that the parties intended that the buildings should be wholly or partly upon the two lots. The railroad company removed from its original location all and every portion of the depot (the pumping station and water-closet, or privy, were not mentioned in the contract, and, while appellant contends that this privy was a part of the depot, yet Montana never contracted for the privy, but for a depot, and we can omit these from any consideration at all), and rebuilt it, not on that side

of the track where it was first erected, but on the oppo-
site side. There is nothing in the record to show what
lands or interest Montana had on either side of the track;
but we do know that he was satisfied with the original
location, as he acquiesced in it. Although the depot was
not wholly on the lot, if in its removal the depot had
been placed upon any other portion of the lot, no objec-
tion could have been made. It is a matter of common
knowledge, and recognized by all business men, that the
location of a depot for either passengers or freight, or
both, sometimes—indeed, generally—enhances the value
of adjacent property. In large cities and towns, such
locations always and necessarily affect the value of ad-
joining property; and in country towns the same results
follow.

The maintenance of a depot on the west side of a rail-
road track is more valuable and convenient to those
having connection with the railroad and who live on
the west side of the railroad. Their ingress and egress
to and from is attended with less risk than when they
are required to cross the railroad tracks. They can de-
liver and receive their freight without having to cross
the track, and, as long as the depot remained as origin-
ally located, patrons of the railroad, either while receiv-
ing or discharging their freight, could drive their wagons
to the western side of the depot or platforms, and be
safe and secure from the movement of trains. The ar-
rival and departure of trains would and could not either
injure them or their teams or interrupt their business.
But this is not true as to the present depot. The map
introduced in evidence by both of the litigants shows
that the depot was located between two main lines of
track, one on the west, the other on the east side, and a
person going to the depot from either direction was com-
pelled to traverse one of these tracks, and if he goes with
a conveyance driven by live stock he takes the chances
of having his stock frightened while waiting at the side

of the depot for the reception or discharge of his freight. A railroad track, where the trains are wont to move, is a place of danger. Every one knows that in a small country town the location for a store or any other place of business is much more desirable on that side of the railroad track where the depot is located. Illustration after illustration can be given in demonstration of the soundness and practicability of these statements. The question is not how many feet, yards, or rods the present site is from the old site. In some instances a removal of twenty-five or fifty feet would be a more open and flagrant violation of the contract than if the distance were a quarter of a mile. After a careful consideration of the facts shown in the evidence, our conclusion is that there was a breach of the condition, and that the plaintiff is entitled to recovery.

The greatest difficulty we have had is in determining whether the forfeiture applies to both lots, or to the west lot alone. The language is, "should at any time in the future remove said depot or section houses, or both, off of the land described." We must give force and effect to every word used in the instrument, if by so doing harmony can be preserved. In other words, we cannot strike out of the contract any word which by so doing will alter the meaning. If the language had been "remove said depot or section houses," the meaning would have been manifest that the removal of either would have worked a forfeiture of both lots. But the words are "depot or section houses, or both." The word "both," when taken in connection with the context, must mean that, when both the depot and section houses are removed, a breach of the condition subsequent happens as to both lots.

We do not deem it necessary to enter into a discussion of the question as to whether the Lakeview Traction Company acquired the rights of Montana. That he did so cannot be doubted, under the several conveyances and under our statute.

As to the exception contained in the deed from Ben Boone to the Lakeview Traction Company, it is manifest that this was inserted to protect the grantor on his covenants of warranty. If, however, it was not so intended, it would be void, because repugnant to the granting clause.

It is a correct principle of law, as announced by counsel for appellant, that upon a breach and nonperformance of a condition annexed to the grant of a freehold estate the title conveyed is not void, but is only voidable by the acts of the grantor or his heirs, who must take advantage of the condition, and repossess himself of the estate by actual re-entry, or by some act equivalent thereto, and manifesting an intent to terminate the estate. This rule applies, even though the land is expressly conditioned to revert upon breach or nonperformance of the condition; but we dissent from the statement copied from the opinion in *Railroad Company* v. *Neighbors,* 51 Miss. 412, that ''the election to insist upon a forfeiture or a waiver of it must be made promptly after the breach or knowledge thereof.'' The court in the Neighbors case was discussing the rights of a plaintiff to have the contract annulled or set aside by a court of equity, and the facts in that case show that the grantor in his lifetime made no complaint, nor did his heirs after his death, covering a period of twenty years, of any misuse or misappropriation of the land.

But, in addition, we say that by the repeated and recent utterances of this court the doctrine of laches, pure and simple, no longer finds favor in this state. No time short of the time prescribed by the statute of limitations will bar the action. We, of course, have no reference to instances of estoppel.

The plaintiff was entitled to recover rents under the statute from the date of the institution of the suit up to the date of the trial. *Dean* v. *Tucker,* 58 Miss. 487. The bringing of the suit was equivalent to an act of re-entry.

Affirmed upon direct appeal and upon cross-appeal, as to the land recovered, but reversed upon the question of rents.

*Affirmed as to the land recovered.*
*Reversed upon the question of rents.*